# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY LIETZOW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 17 C 5291 |
| | ) |
| VILLAGE OF HUNTLEY, JAMES DALEY, ALEX PANVINO, and DAVID SANDER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Now before the Court is Defendants Village of Huntley (the "Village"), James Daley ("Daley"), Alex Panvino ("Panvino"), and David Sander's ("Sander") (collectively, "Defendants") motion to dismiss Plaintiff Anthony Lietzow's ("Lietzow") Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Defendants' motion is denied.

## BACKGROUND

The Court accepts as true the following well-pled allegations from Lietzow's SAC.[1] All possible inferences are drawn in Lietzow's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

---

[1] Lietzow's SAC is largely identical to his five-count First Amended Complaint ("FAC"). The Court accordingly replicates the statement of facts from its January 11, 2018 Order dismissing Lietzow's FAC, with appropriate modifications.

At all times relevant to the SAC, the Village was the principal employer of police officers Daley, Panvino, and Sander (collectively, the "Officers"), all of whom were "acting under color of law and in the scope of their employment with [the Village] as duly sworn police officers." Lietzow is a resident of Huntley, Illinois.

On July 19, 2015, the Officers were dispatched to 10284 Mayflower Lane, Huntley, Illinois, to investigate a reported domestic incident. Lietzow was "in his house" at the time, "had committed no crime," and was unaware that police were on his property. Lietzow asserts that there was no search warrant for entry or search of his home, nor were there "exigent circumstances or any other exception to the warrant requirement for entering [his] home without his consent." Nonetheless, the Officers made a "forcible entry" into Lietzow's home by entering through his garage. Daley allegedly "forcibly pushed open the door to [Lietzow's] residence" and all three officers entered "without a warrant, consent, or other legal justification." Neither Lietzow nor his wife ("Mrs. Lietzow") authorized the Officers to enter their home.

When the Officers entered the residence, Lietzow told them to leave immediately. Instead, the Officers "unlawfully remained within the home, with no legal authority." They then "falsely arrested" Lietzow and "falsely charged" him with aggravated battery to a police officer, resisting arrest, and domestic battery. Lietzow insists that there was no probable cause for his arrest.

After the arrest, the Officers allegedly authored police reports falsely asserting that Lietzow had resisted their arrest and had struggled against being handcuffed.

2

Lietzow asserts that he did not batter the Officers or resist their arrest. The Officers also falsely asserted that Mrs. Lietzow told them that Lietzow had choked her and that she gave them consent to enter her home. Mrs. Lietzow allegedly never said such a thing, nor had she made any statement "that could form the basis for probable cause to arrest" Lietzow.

The next day, on July 20, Daley "maliciously and without probable cause" signed a criminal complaint against Lietzow. On or about the same day, Lietzow was held in pretrial custody on bond, based upon false statements "knowingly and maliciously" made by the Officers in their police reports. On September 3, 2015, Lietzow was indicted for aggravated battery to a police officer, aggravated domestic battery, resisting arrest, and domestic battery, "based upon the above-describe[d] false statements of the [Officers]," and thereafter subjected to criminal prosecution in the matter of *People of the State of Illinois v. Anthony Lietzow*, Case No. 15 CF 631.

The following sequence of events then occurred, each "in a manner consistent with the innocence of [Lietzow]." On October 3, 2016, the trial court granted the State of Illinois' motion to *nolle pros* Lietzow's aggravated domestic battery charge. On October 5, 2016, the trial court dismissed the domestic battery charge in a directed verdict. On October 6, 2016, a jury found Lietzow not guilty of aggravated battery and resisting arrest. Lietzow alleges that, as a result of the Officers' actions, he "experienced injuries including but not limited to loss of freedom, humiliation,

3

emotional distress, loss of wages, loss of employment, pecuniary damages, and legal expenses."

On July 18, 2017, Lietzow filed a five-count complaint against Defendants. On November 20, 2017, Lietzow filed his FAC, which the Court dismissed without prejudice on January 11, 2018. On February 21, 2018, Lietzow filed his SAC, asserting the following five counts: Count I, False Arrest/Failure to Intervene, against the Officers, in violation of 42 U.S.C. § 1983; Count II: Illegal Pretrial Detention, against the Officers, in violation of 42 U.S.C. § 1983; Count III: Malicious Prosecution, against all Defendants, in violation of Illinois state law; Count IV: Illegal Search and Seizure, against the Officers, in violation of 42 U.S.C. § 1983; and Count V: Indemnification, against the Village. Defendants seek dismissal of the SAC in its entirety.

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but must provide enough factual support to raise his right to relief above a speculative level. *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim," and may be considered in a district court's ruling on a motion to dismiss. *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## **DISCUSSION**

### I. **Judicial Notice and Collateral Estoppel**

Defendants put forth various arguments in their motion to dismiss, but perhaps the most significant one is that the existence of probable cause to arrest Lietzow defeats his claims. Namely, Defendants argue, probable cause destroys Lietzow's false arrest, failure to intervene, illegal pretrial detention, and malicious prosecution claims. Defendants invoke the doctrines of judicial notice and collateral estoppel to support their position. The parties' discussions on these two issues plague much of the briefing on this motion. The Court accordingly aims to resolve them first.

**A. Judicial Notice**

The Court's review on a 12(b)(6) motion is typically limited to the pleadings in the Complaint and any attachments. *Limestone Dev. Corp. v. Vill. of Lemont*, 473 F. Supp. 2d 858, 867 (N.D. Ill. 2007). The Court may, however, take judicial notice of "facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 773–774 (7th Cir. 2012). Courts often take judicial notice of court records, including underlying state court proceedings. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997); *Henson*, 29 F.3d at 284. But while the Court may recognize a prior judicial act, it cannot rely on the facts in a court record for "the truth of the matter asserted." *Gen. Elec.*, 128 F.3d at 1082 n.6 (citing *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (stating that judicial notice of a court order is limited to "recognizing the 'judicial act' that the order represents"); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (holding that a court may take judicial notice of a court order "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and filings") (citation omitted)).

Defendants ask the Court to take judicial notice of a state court order in Lietzow's criminal case. More specifically, they claim that the Court may take judicial notice of certain findings of fact the presiding judge made after review of the record and in-court

6

witness testimony. These findings, including that Mrs. Lietzow told the Officers that Lietzow choked her and gave them consent to enter the house, would be fatal to Lietzow's case. As stated above, however, the Court may not take the facts inscribed in the state court order "for the truth of the matters asserted." *Liberty Mut. Ins. Co.*, 969 F.2d at 1388. This is especially so when the findings of fact directly contradict the facts asserted in Lietzow's SAC, which we must accept as true for the purposes of this motion. Moreover, Defendants would have the Court use the state court judge's findings to make its own determination that probable cause existed based on those facts. Employing judicial notice in such a way is wholly inappropriate.

Defendants also note that the grand jury indictment against Lietzow "definitively establishes the requisite probable cause." *See Kaley v. United States*, 571 U.S. 320, 328 (2014) ("An indictment fair upon its face, and returned by a properly constituted grand jury…conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged."). Lietzow alleges, however, that the probable cause determination was predicated on false statements made by the Officers and consequently argues that probable cause did not exist. The probable cause issue, however, is afflicted by collateral estoppel elements, which we discuss next.

**B. Collateral Estoppel**

Defendants argue that collateral estoppel precludes Lietzow's claims related to probable cause. Collateral estoppel, also known as issue preclusion, bars a party from relitigating an issue that was already litigated and resolved in a prior proceeding. *Toro*

7

*v. Gainer*, 370 F. Supp. 2d 736, 739 (N.D. Ill. 2005). Defendants contend that the probable cause issue was "thoroughly litigated" in state court and Lietzow accordingly cannot dispute its existence.

Lietzow contends that collateral estoppel does not apply because he had no opportunity to appeal the state court's findings due to his acquittal. Illinois state and federal courts have held that collateral estoppel may not apply when "peculiar circumstances" exist, for example, when a defendant had no opportunity to appeal a prior ruling in his criminal case because he was acquitted. *See People v. Mordican*, 356 N.E.2d 71, 73 (Ill. 1976); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1021–23 (7th Cir. 2006) (extending *Mordican* to the civil context and finding that a criminal defendant can protest the use of collateral estoppel against her in a subsequent § 1983 action).

Defendants rely heavily on *Thompson v. Mueller* in arguing that collateral estoppel applies in this case. 976 F. Supp. 762 (N.D. Ill. 1997). In *Thompson*, the district court held that collateral estoppel barred the plaintiff from arguing in his § 1983 case that the officers who arrested him lacked probable cause. In the plaintiff's criminal case, the state court denied the plaintiff's motion to quash his arrest, but he was later acquitted and therefore unable to appeal the adverse ruling. Despite acknowledging that Illinois state courts and federal courts in the Seventh Circuit "essentially created a black-letter rule of law" that the collateral estoppel doctrine is inapplicable when there

8

is no possibility to appeal, the *Thompson* court decided to stray from that rule.[2] Instead, it held that collateral estoppel did not apply because the state judge's decision rested on the credibility determinations of several witnesses and "the possibility of the decision being reversed on appeal was, at best, extremely low." *Id*. at 766.

We cannot subscribe to the *Thompson* court's reasoning. Not only does it ignore years of Illinois state and federal case law that unequivocally held that the absence of appellate review prevented collateral estoppel, it also adds a layer of analysis regarding the plaintiff's likelihood of success on appeal that is speculative and especially inappropriate at the motion to dismiss stage.[3] And while Defendants cite to cases that followed *Thompson's* doctrinaire ruling, *e.g.*, *James v. Concepcion*, 1998 WL 729757 (N.D. Ill. 1998) courts more frequently diverged from *Thompson* and applied the established rule of law. *See, e.g., Sornberger*, 434 F.3d at 1022 (concluding that collateral estoppel cannot bar relitigation of issues resolved in suppression ruling based on credibility determinations); *Toro v. Gainer*, 370 F. Supp. 2d 736, 740–41 (N.D. Ill. 2005) (declining to follow *Thompson* because "it failed to give proper weight to the state courts' view that acquittal is a 'peculiar circumstance' that militates against collateral estoppel").

---

[2] It based its reasoning on *Prymer v. Ogden*, which stated that "a final judgment of a court of first instance can be given collateral estoppel effect even while an appeal is pending." 29 F.3d 1208, 1213 n.2 (7th Cir. 1994). The *Thompson* court concluded *Prymer* "impl[ied] that the right to appeal the issue is not dispositive." *Thompson*, 976 F. Supp. at 765.

[3] We note that the *Thompson* decision was made on a summary judgment motion. Defendants' reliance on *Thompson*, however, would have the Court speculate whether Lietzow would have been successful on appeal in order to determine, conclusively at the motion to dismiss stage, that probable cause existed to arrest Lietzow. The Court rejects this method.

Here, Lietzow's acquittal created a "peculiar circumstance" whereby Lietzow had no opportunity to appeal the adverse state court probable cause findings. Collateral estoppel therefore cannot preclude his claim that probable cause did not exist. *See Toro*, 370 F. Supp. 2d at 740 (finding that pretrial ruling on probable cause had no preclusive effect because plaintiff was unable to appeal); *Lyttle v Killackey*, 546 F. Supp. 2d 583, (N.D. Ill. 2008) (concluding that plaintiff who could not appeal pre-trial order post-acquittal was not estopped from raising the issue in civil case).[4]

Most importantly, collateral estoppel is an equitable doctrine that must not be applied "unless it is clear that no unfairness results to the party being estopped." *Sornberger*, 434 F.3d at 1023. Precluding Lietzow from disputing the existence of probable cause for his arrest when he had no reasonable opportunity to appeal such a finding would be unjust. "The unfairness that would result from enforcing a finding that could not be appealed is unacceptable." *Simpkins v. City of Belleville, Ill.*, 2010 WL 1849348, at *7 (N.D. Ill. 2010).

\*   \*   \*

For the above-mentioned reasons, neither judicial notice nor collateral estoppel prevents Lietzow from alleging that the Officers lacked probable cause to arrest him.

---

[4] The cases cited by Defendants are inapposite. The plaintiff in *Cameron v. Patterson* did not raise a "peculiar circumstance" in which he was unable to appeal; instead, his "only challenge to the application of collateral [estoppel] [was] that he did not have a full and fair opportunity to argue his claims in the state court" because a certain witness was not called to testify and the judge did not sufficiently consider certain evidence. 2012 WL 1204638, at *3 (N.D. Ill. 2012). Moreover, in *Wallace v. City of Chicago*, the court found that the absence of appellate review was not a "peculiar circumstance" because the plaintiff "was *given the opportunity to appeal* his suppressed confession, but chose not to do so." 472 F. Supp. 2d 942, 948 (N.D. Ill. 2004) (emphasis added).

10

## II. Qualified Immunity

Defendants' qualified immunity argument raises the same concerns. Defendants contend that the Officers are protected by qualified immunity because there are no facts suggesting that their conduct was "so egregious that no reasonable person could have believed that it would not violate clearly established rights." *See Smith v. City of Chi.*, 242 F.3d 737, 742 (7th Cir. 2001). They claim that the Officers relied on Mrs. Lietzow's statement of the incident and her consent to enter the home. As discussed above, however, the Court cannot take judicial notice of this finding of fact. Lietzow alleges that the Officers entered his house illegally and falsely arrested him. These are alleged constitutional violations and, as such, are not shielded by qualified immunity.

## III. Count I: False Arrest/Failure to Intervene

Lietzow alleges that the Officers falsely arrested him and that each Officer "individually failed to intervene to prevent their fellow Defendant Officers from causing [Lietzow] to be arrested and unlawfully detained, despite having the opportunity to do so." The Defendants' sole argument against Lietzow's false arrest claim is that the existence of probable cause is a complete bar to such a claim. Having found that neither judicial notice nor collateral estoppel establishes the existence of probable cause or bars Lietzow from claiming its absence, this argument alone does not combat Lietzow's claim. Lietzow's false arrest claim stands.

Next, the Defendants argue that Lietzow insufficiently pled his failure to intervene claim. To state such a claim, Lietzow must allege that the officers had reason

to know there was a constitutional violation occurring and had a realistic opportunity to intervene to prevent the harm from occurring. *Morfin v. City of East Chi.*, 349 F.3d 989, 1001 (7th Cir. 2003); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Defendants note that Lietzow's SAC contains no specific allegations as to how the Officers failed to intervene and is devoid of facts that any officer acted or failed to act with a deliberate or reckless disregard for Lietzow's constitutional rights.

Lietzow need not allege specifically and explicitly how the Officers failed to intervene, so long as the narrative suggests that they could have acted to intervene but failed to do so. *See Yang*, 37 F.3d at 285 (holding that although the plaintiff's complaint "fail[ed] to *explicitly* specify the existence of an opportunity for [the officer] to have intervened, the facts demonstrate several opportunities during which [the officer] could have acted"). Lietzow alleges that all three Officers entered his house without consent and arrested him without probable cause. Drawing all reasonable inferences in his favor, it is plausible that each Officer had the opportunity to intervene and prevent the allegedly unconstitutional acts committed during Lietzow's arrest. Because Lietzow alleges that all Officers were involved in the false arrest and neither of them intervened, he has sufficiently stated a failure to intervene claim. *See Clark v. City of Chi.*, 2010 WL 4781467, at *6 (N.D. Ill. 2010).

The Court denies Defendants' motion to dismiss Count I.

## IV. Counts II & III: Illegal Pretrial Detention & Malicious Prosecution

Lietzow's claims of illegal pretrial detention and malicious prosecution center around the Officers' alleged conduct of falsifying statements in the police report to support an invalid probable cause determination, causing him to be illegally detained and subject to prosecution in state court.

To state a malicious prosecution claim under Illinois law, Lietzow must allege: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009). Defendants argue that Lietzow's malicious prosecution claim fails because (1) not all charges were dismissed in a manner indicative of Lietzow's innocence; (2) probable cause existed; and (3) prosecutors, not police officers, are liable for malicious prosecution.

For their first argument, Defendants claim that "[t]he mere fact that the aggravated domestic battery charge was *nolle prossed* in the underlying criminal case does not necessarily constitute a favorable termination." They cite to *Swick v. Liautaud* to support this proposition. 169 Ill. 2d 504, 513 (Ill. 1996). *Swick*, however, makes clear that "the majority rule is that a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative of the innocence of the

13

accused." *Id*. The court adopted this rule but found that the plaintiff had not met his burden of proof that the termination was favorable because he did not establish that the *nolle prosequi* was entered for reasons consistent with his innocence. *Id*. Lietzow's allegation that the charge was dismissed in a manner indicative of his innocence is sufficient at the motion to dismiss stage. Whether he will be able to meet his burden of proof is a question for later.

Defendants' argument that probable cause did, in fact, exist for Lietzow's arrest and subsequent prosecution is also premature. As discussed above, collateral estoppel does not preclude Lietzow from disputing probable cause. Lietzow alleges that probable cause did not exist, and for purposes of this motion, we must accept that as true. Therefore, Lietzow has sufficiently pled his malicious prosecution claim.

Defendants also argue that Lietzow's illegal pretrial detention and malicious prosecution claims incorrectly target the Officers, as opposed to the grand jury or prosecutors who actually brought the case against him. They cite to Justice Ginsburg's concurrence in *Abright v. Oliver*, in which she stated that the principal player in carrying out a prosecution is not the police officer but the prosecutor. 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring). Defendants twist Justice Ginsburg's words, however, to say that a malicious prosecution claim against police officers is an anomaly. In actuality, Justice Ginsburg called the plaintiff's reliance on a malicious prosecution theory rather than a Fourth Amendment theory anomalous because, after prosecutorial

14

immunity protects the prosecutor, "the star player is exonerated, but the supporting actor is not." *Id*.

Also in actuality, malicious prosecution claims are routinely brought against police officers, even if they are "generally disfavored." *See Wilbon v. Plovanich*, 67 F. Supp. 3d 927, 949 (N.D. Ill. 2014). "Police officers may be liable for malicious prosecution if they either signed a criminal complaint or played a significant role in causing the prosecution of the plaintiff." *Id*. (citations omitted). Here, Lietzow alleges that the Officers "maliciously and without probable cause" signed a criminal complaint charging Lietzow with several offenses based on false statements. He has sufficiently alleged a malicious prosecution claim against the Officers.

Defendants finally argue that Lietzow's illegal pretrial detention claim is unviable, returning to their argument that probable cause existed and adding that Mrs. Lietzow gave the Officers consent to enter the home. For the reasons already discussed above, we cannot currently accept the state court judge's recitation of the facts, including that Mrs. Lietzow gave consent, when Lietzow's allegations are in stark contrast. Defendants further contend that Lietzow's illegal pretrial detention claim is conclusory, "merely asserting that he was arrested and detained without probable cause." This is false. Lietzow alleges specifically that the Officers knowingly falsified reports, including statements that allegedly were not made by Mrs. Lietzow, in order to manufacture probable cause and arrest him.

The Court denies Defendants' motion to dismiss as to Counts II and III.

## V. Count IV: Illegal Search & Seizure

Lietzow alleges that the Officers illegally entered his home without consent, a warrant, or exigent circumstances justifying their entry. Defendants contend that Mrs. Lietzow gave the Officers consent to enter the home, despite Lietzow's allegation that she said no such thing. Again, Defendants rely on the finding of facts that the state court judge made in Lietzow's suppression ruling. They further argue that collateral estoppel bars the relitigation of whether consent was given. Because Lietzow had no opportunity to appeal, however, collateral estoppel does not apply. Defendants' argument therefore fails to eradicate Lietzow's illegal search and seizure claim.

The Court denies Defendants' motion to dismiss Count IV.

## VI. Count V: Indemnification

As Lietzow's claims against the Officers still stand, his indemnification claim against the Village remains.

## CONCLUSION

For the aforementioned reasons, the Court denies Defendants' motion to dismiss Lietzow's SAC. It is so ordered.

Dated: 11/29/2018

Charles P. Kocoras
United States District Judge